## Case No. 4,831.

### FISKE v. HUNT.

[2 Story, 582.] [1]

Circuit Court, D. Massachusetts. Oct. Term, 1843.

Rand, for assignee.
B. R. Curtis, for defendant.

[1] [Reported by William W. Story, Esq.]

STORY. Circuit Justice. The statement of the material facts in the present case may be thus briefly given. The creditor, Hunt, sued the bankrupt, Healey, in assumpsit, on a writ of attachment, on which real estate was attached, and the trustees were summoned, in the state court of common pleas for Suffolk county, returnable to the October term, 1842; and no defence then existing, the defendant Healey was, with his own consent, defaulted. The cause was then continued to the next January term of the same court, 1843, in order to ascertain, whether the trustees, or some of them, had any effects; and it was again continued, for the same purpose, to the April term of the same court. At the April term, no application having been made to the court of common pleas to take off the default, a final judgment was rendered against the defendant Healey, on the 26th day of May, 1843. In the intermediate time, to wit, on the 25th day of January, 1843, Healey petitioned the district court for the benefit of the bankrupt act, and on the 14th day of March, 1843, he was accordingly declared a bankrupt; and upon the 20th day of the same month, Fiske (the plaintiff) was appointed the assignee of his estate. On the 7th of April, before the judgment was taken, the assignee made an application to the district judge for a writ of injunction against the defendant, Hunt, that he might be restrained from further prosecuting his said suit, which was granted upon a hearing ex parte on the same day. Hunt afterwards made an application to the court to dissolve the injunction, so granted; and upon the hearing of the case, on the 28th of April, 1843, the injunction was dissolved by the district court; and on the 26th of May, 1843, the judgment was entered in the suit in the court of common pleas. No application was made to the court of common pleas, at any time before the judgment, to take off the default, or to stay the proceedings or judgment. An execution was issued on the judgment on the 22d of June, 1843, and by levies thereon the execution was satisfied for about $1463.98. The bill seeks to set aside the judgment as a fraud upon the bankrupt, and to have the moneys and property levied and received upon the execution paid over and reconveyed to the assignee, and for other relief.

The case, then, for the purposes of the argument, stands for consideration upon the following points: (1.) Whether the assignee is entitled to any relief, in a case where, before the bankruptcy, the judgment debtor has voluntarily consented to be defaulted; and of course, where, in a legal sense, he is out of court, and has no day either for appearance or pleading in the court. (2.) Whether it will make any difference in the case, that the judgment has been rendered after the bankruptcy, with a full knowledge thereof. (3.) Whether it will make any difference, that the assignee has full knowledge of the pro-

ceedings in the court, where the suit is pending, before the judgment is rendered, and makes no application to take off the default, or suspend the judgment. (4.) Whether the final hearing upon the matter of the injunction before the district court is conclusive upon the point, that the creditor, Hunt, was lawfully entitled to take judgment, and that the assignee, having elected his remedy before the district court, can entitle himself in the circuit court to maintain the present bill.

In respect to the three first points (which may be conveniently considered together,) it is material to be borne in mind, that, in cases unaffected with fraud, the assignee generally, although perhaps not universally, succeeds to those rights, and those rights only, which belong to the bankrupt. His remedy may be more extensive, growing out of the bankruptcy; but his rights are not enlarged. In the present case, there is no pretence to say, that the default, or the judgment was a fraudulent contrivance, between the bankrupt and the creditor (Hunt,) to give the latter a preference, in contemplation of bankruptcy. Such a contemplation, if it had existed, would have been sufficient to have vitiated all the proceedings. Now, is there any ground to suggest, that the creditor (Hunt) proceeded to take his judgment suddenly after the bankruptcy, before the assignee was appointed, or had an opportunity to apply to the court of common pleas to take off the default, or to stay proceedings? That might have presented a very different case. Here the case is one, where no application was ever made to take off the default, or stay proceedings so as to let the party into any defence arising under the bankruptcy, in case the bankrupt should obtain his discharge. The bankrupt and the assignee must, therefore, be deemed to have submitted voluntarily to the judgment, either upon the ground, that they would not be successful in any such application, or that it would not furnish, if allowed, any just ground of defence, under all the circumstances. Now, I must say, that, looking to these special considerations, and to the fact, that the default was by the express consent of the debtor (Healey), it does not strike me, that there is laid in the bill any just ground of relief upon the default and judgment. The assignee and the bankrupt have both voluntarily withdrawn from the court, where the suit was pending, and suffered the judgment to go without opposition. In these respects, it must resemble the case Ex parte Vose [unreported], decided in this court a few days ago, although distinguishable from that in some other particulars.

But I should be unwilling to rest the present case upon this narrow ground, because it seems to me, that the court is called upon, by the frequency of the occurences of this sort, to lay down a rule more comprehensive upon the subject. And it strikes me, that, after the term has passed, at which the default has been entered before the bankruptcy, not by surprise, or mistake, or fraud, but by the voluntary consent, or wilful non-appearance of the party, then, and under such circumstances, as the matter of taking off the default is and must be a matter of sound discretion in the court, where the suit is pending, and not of absolute right in the party, this court ought to be very slow in interfering with that discretion; and unless under extraordinary circumstances, raising some equity, it ought to leave the case to the court where it is pending, to act ex aequo et bono, at it deems suited to the merits of the application. But, at all events, I am prepared to say that where a default has been so entered, and an assignee has been appointed before judgment, and has not, with knowledge of the fact, chosen to apply to the court to take off the default, or to stay the proceedings, that, of itself, ought to be deemed an abandonment of any defence in such suit, and conclusive upon all the creditors whom he represents. Further than this it is not necessary to go, in order to decide the present case; and, therefore, I leave the naked question, whether after a default, which has never been taken off, or has been refused to be taken off by the court, and the judgment has been rendered thereon (without any prohibitory injunction,) any redress ought to be given, either in this court or in the district court in bankruptcy, to be decided, when it shall directly arise in judgment.

Upon the other remaining point, as to the effect of the dissolution of injunction by the district court, there may perhaps be more difficulty. The suit in the district court, and the bill in this court, are not, indeed, throughout, identical in their matter, or their claim for relief. The petition for an injunction, under the circumstances, could go no farther than to ask for an interlocutory degree for an injunction, until it should be ascertained whether there should be any discharge granted to the bankrupt, which could be pleaded in bar of the suit. It was, of course, temporary; and the granting it was not decisive of the merits of the application. But when the court dissolved the injunction, which I am to take, from the statement in the case, to have been a decree upon the merits of the application, and not upon any ground of irregularity, there, by implication, the court must have decided that there was no ground to prevent the creditor from proceeding to judgment in his suit upon the default. Now the present bill asks for relief against that very judgment, and to have it set aside, and to have the moneys and lands levied upon under the execution, to be restored to the assignee. This is certainly far broader relief than was claimed, or could, under the circumstances of the case, have been asked or given upon the petition for the injunction. But then the question still arises, whether in a case, like the present, the relief sought is a matter of right, or in the sound

discretion of the court. And if it be the latter only, then whether this court ought to set aside the judgment, and grant the other relief prayed by the bill, after the district court has impliedly sanctioned that judgment by allowing it to be entered. In my judgment, the interposition of the court in a case of this sort is a matter of sound discretion, and not a matter of right in the party. Before the court grants the relief, it should be entirely satisfied that the judgment ought to be set aside, as improperly, or, at least, improvidently obtained; and that the creditor (Hunt) is entitled to no lien or equity in the premises, which should be protected and sustained by the court against the claims of the other creditors. Now, I must say, that I am not able to perceive any solid ground, upon which this incipient claim, or right of priority or lien (call it which you please), created by the attachment, has been displaced, or ought to be displaced. The creditor has but followed out his legal rights to their natural and ordinary consummation. He has obeyed the injunction of the district court, and taken judgment only, when, by the decree of that court, he was definitively informed, that he was at liberty to do so, and that there was not in the judgment of the court, sitting in bankruptcy, any ground to dispute, or to displace, or postpone his legal rights. Now, this was a matter clearly within the jurisdiction of the district court, sitting as a court of equity in bankruptcy, under the 6th section of the bankrupt act of 1841, c. 9 [5 Stat. 440]. If that decision, coming incidentally under consideration, under the view of this court, in a bill in equity for more general purposes is not, and cannot be pleaded as a flat bar to a bill; as I incline to think that it cannot, still it addresses itself strongly to the discretion of the court, as a matter fit to operate upon its own judgment, in refusing to interfere, where the judgment is founded upon a just claim, and the district court has justified the creditor in entering it.

The cases, which have been cited at the bar in support of the bill, are, in my judgment, distinguishable from the present in leading circumstances. I adhere to the doctrine laid down in Ex parte Foster [Case No. 4,960]; and, indeed, after much reflection upon it since it was delivered, I maintain, notwithstanding some doubts, which have been attempted to be thrown over it by those who have certainly misunderstood its true bearing, or have dissented from it, without condescending to answer its reasoning, that it is founded in the true interpretation of the bankrupt act of 1841, c. 9 [supra], and upon authorities of the highest consideration and value. But in that case there was not only no default, but the cause was but just commenced, and no pleadings were had, and, indeed, the writ itself was not returnable until April after the petition was filed. Parker v. Muggridge [Case No. 10,743], was a cause of default, and a con-

tinuance for judgment under a special agreement, and it was held, that the creditors had a right, under the agreement, to proceed to judgment, and had an equitable lien on the property attached. In Ex parte Cook [Id. 3,152], the judgment itself was obtained before the petition in bankruptcy was filed; and it was held to be a clear case of lien within the protection of the bankrupt act of 1841, c. 9 [supra]. Ex parte Vose has been already referred to, and, as has been said, approaches very near to the present. So far as it does go, it is against the plaintiff.

The cases, which have been cited from the English courts, to establish the doctrine, that the courts of common law will, after an interlocutory judgment upon default, set it aside in order to allow the bankrupt to plead his discharge, are, it seems to me, founded in good sense and reason. Evans v. Gill, 11 Bos. & P. 52; Duff v. Campbell, 3 Barn. & Ald. 577. See, also, Ex parte Sawtell, 6 Pick. 110; Shearer v. Jewett, 14 Pick. 232; Lovell v. Eastaff, 3 Term R. 554. But they are addressed to the discretion of the court of common law, where the suit is pending, and might have furnished a good ground to that court to take off the default, or to stay the proceedings. But no application was made to the court of common pleas in the present case to take off the default, and final judgment was regularly rendered in the case. There is then no equity, addressed to this court, from the circumstances, upon which it can act upon the judgment. It may be observed too, that the cases cited were to set aside interlocutory judgments; and that, by the late bankrupt act (6 Geo. IV. c. 16, § 108), a special provision has been made to meet cases, where final judgments are rendered, and to take from the judgment creditor any more than his rateable proportion of the bankrupt's assets. But the judgment itself is not interfered with. 2 Tidd, Pr. (9th Ed. 1828) p. 570.

The main stress of the argument of the plaintiff is this, that the lien was a conditional one, and not absolute, dependent upon future contingencies at the time when the bankruptcy took place. To that I agree; but then the judgment has been obtained upon that conditional lien, and perfected and made absolute thereby in a regular manner, without any fraud or impropriety on the part of the creditor, and without any surprise or asserted mistake on the part of the bankrupt, or of his assignee. The latter have had full opportunity to apply for relief and to suspend the proceedings in the court of common pleas before judgment, if they, or either of them, had applied to the court for the purpose. Instead of adopting that course, they have silently acquiesced in the judgment, without interposition or objection. The assignee did apply to the district court for an injunction to stay the proceed-

ings and judgment; but the application failed of final success. The circuit court, therefore, is called upon to say, that a judgment, regularly obtained in the proper court, by which the lien became absolute and was perfected, ought now to be set aside, and the execution thereof avoided, not because the judgment is not a just one, but because, if the assignee had interfered in the proper court, the judgment might have been stayed; and, therefore, the circuit court ought not to do for the assignee what he might have done for himself in another court, if he had thought proper to act in the premises. It appears to me, that the present case falls directly within the reasoning of the case Ex parte Vose. The assignee has not interfered at the proper time, or in the proper court, to stay the judgment or to take off the default, and, therefore, he may, in a just sense, be said voluntarily to have withdrawn himself from the suit.

Upon the whole, in every view, in which I can contemplate this case, it is not one in which the assignee is entitled to relief in this court. Bill dismissed without costs.